**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henry Eldridge White, II, | No. CV-23-02125-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Henry Eldridge White, II's Application for Supplemental Security Income under the Social Security Act. Plaintiff filed a Complaint and an opening brief with this Court seeking review for the denial of benefits. (Docs. 1, 9.) Defendant, Commissioner of the Social Security Administration ("Commissioner"), submitted a response brief (Doc. 11), and Plaintiff submitted a reply. (Doc. 12.) The Court has reviewed the briefs and administrative record (Doc. 8, "AR") and now affirms the decision below.

**I.    BACKGROUND**

Plaintiff filed an application for Title XVI Supplemental Security Income on August 13, 2021, alleging disability beginning August 1, 2021. (AR. at 16, 174.) Plaintiff's application was denied initially on October 18, 2021, (AR. at 16, 62), and upon reconsideration on May 27, 2022. (AR. at 16, 69.) Plaintiff requested a hearing, held on April 4, 2023 (AR. at 29), and the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application. (AR. at 13.) The Appeals Council denied Plaintiff's request

for review, and the ALJ's decision became final. (AR. at 1.) Following the unfavorable decision, Plaintiff filed this appeal.

After considering the medical evidence and opinions, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 13, 2021. (AR. at 18.) The ALJ found that Plaintiff had the following severe impairments: (1) borderline personality disorder/anxiety/depression; (2) diabetes mellitus; (3) hypothyroidism; and (4) obesity. (AR. at 19.) The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (AR. at 20.)

In assessing the Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff's symptom testimony was not entirely consistent with the evidence of record. (AR. at 22.) With respect to the medical opinions, the ALJ found the conclusion that Plaintiff had no severe mental or physical limitations unpersuasive because the record establishes diabetes mellitus, obesity, and hypothyroidism. (AR. at 24.) Despite this, the ALJ did find that these opinions "support the ultimate finding that the [Plaintiff] is not disabled." (*Id.*) The ALJ determined that Plaintiff had the RFC to perform medium work except: he can occasionally balance; he can understand, remember and carry out simple instructions and tasks; he can perform work at a normal pace without production quotas; he should not work in a setting which includes constant/regular contact with the general public, and he should not perform work which includes more than infrequent handling of customer complaints. (AR. at 21.)

Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform the jobs of cleaner, linen room attendant, or janitor. (AR. at 25.) Consequently, the ALJ determined that the Plaintiff was not disabled. (*Id.*)

## II.     LEGAL STANDARD

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence

or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment which meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv), (f). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). If not, the claimant is disabled. *Id.*

**III.    DISCUSSION**

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred in

providing for functional limitations after rejecting medical opinions, and (2) the ALJ erred in rejecting Plaintiff's symptom testimony. (Doc. 9 at 2.) The Court addresses each argument in turn.

### A.     Functional Limitations

Plaintiff does not dispute the ALJ's rejection of medical opinions inconsistent in the record but argues that the ALJ erred "by calculating [Plaintiff's] limitations himself based on his lay interpretation of the raw medical data." (Doc. 9 at 8.) Further, Plaintiff contends that the ALJ "failed to develop the record" by determining that Plaintiff had limitations, yet "failed to obtain medical support for the limitations he assessed." (*Id.* at 10.) The Court disagrees.

For claims filed after March 27, 2017, the ALJ is required to articulate the persuasiveness of each medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 416.920c(a)–(b). The ALJ "is not required to take medical opinions at face value" and does not "defer or give specific evidentiary weight . . . to any medical opinion(s)." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020); 20 C.F.R. § 416.920c(a). Instead, an ALJ assesses each opinion and finding based on a variety of factors and can reject opinions if it lacks support or is inconsistent with the overall medical record. 20 C.F.R. § 416.920c(b)(1)–(2).

Here, the ALJ found that Drs. Swena, Penner, Dodson, Garland, and Hassman's opinions were inconsistent with the record, and found those opinions to be unpersuasive. Specifically, the ALJ was "not persuaded" by the findings that Plaintiff had "no severe mental or physical limitations" and that his "impairments were non-severe." (AR. at 24.) However, the ALJ also found that the "assessments support the ultimate finding that the [Plaintiff] is not disabled." (*Id.*)

Plaintiff's contention that the ALJ relied on his own "lay interpretation of the raw medical data" is unfounded. (Doc. 9 at 8.) Notably, Plaintiff concedes that RFC limitations do not need to "be based entirely on a medical opinion" and that it is the "ALJ's duty to evaluate the evidence and determine" the RFC. (*Id.* at 9.) Here, the ALJ's analysis is unlike

cases where an ALJ interpreted raw medical data to reach a conclusion no other physician had. *See, e.g.*, *Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7–8 (S.D. Cal. July 14, 2022) (holding that an ALJ erred when interpreting raw medical data, such as MRIs, radiology studies, and x-rays, to find the plaintiff's functional capabilities rather than rely on medical opinions). Rather, the ALJ relied on physician notes when reaching his conclusion. (AR. at 23.) For example, the ALJ considered a May 2022 evaluation that noted that Plaintiff could ambulate normally and had normal balance for tandem walking, and could stand on either leg but could not hop. (AR. at 23, 414.) The ALJ also noted that Plaintiff's mental status exams were normal, and Plaintiff denied mood swings or anxiety. (AR. at 23, 341, 366–67, 369–70, 373–74, 377–78, 384, 387.) Despite this, the ALJ accounted for Plaintiff's consistent reporting of "history of social difficulties and memory and concentration problems." (AR. at 22.) None of these determinations require an interpretation of raw medical data akin to x-rays or MRIs. *See Howell*, 2022 WL 2759090 at *7.

Furthermore, the ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'n Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). After outlining the Plaintiff's entire medical record, the ALJ determined that the longitudinal record demonstrated ongoing "chronic conditions" which "support a medium [RFC] assessment." (AR. at 24.) As Commissioner points out, the ALJ's findings were *more* restrictive than the limitations that the doctors assessed. (Doc. 11 at 6–7) No harm exists in the "overinclusion of debilitating factors." *See Johnson v. Shalala*, 60 F.3d 1428,1436 n.9 (9th Cir. 1995) ("However, this overinclusion of debilitating factors is harmless simply because if a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration."). Based on a review of the record, the Court finds the ALJ's RFC finding properly incorporated Plaintiff's limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("This represents the type of credibility determination charged to the ALJ which we may not disturb where, as here, the evidence reasonably supports the ALJ's decision.") The ALJ

thus had substantial evidence to determine the Plaintiff's RFC and did not fail to develop the record.

### B.     Symptom Testimony

Plaintiff next argues that the ALJ improperly rejected Plaintiff's subjective complaints. (Doc. 9 at 11–12.)

To evaluate a claimant's symptom testimony, an ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that could reasonably cause a claimant's symptoms. *Lingenfelter v. Astrue* 504 F.3d 1028, 1035–36 (9th Cir. 2007). If there is no evidence of malingering, an ALJ then may reject a claimant's symptom testimony "only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15. If "the evidence is susceptible to more than one rational interpretation" the Court will uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (superseded by statute on other grounds).

In his hearing testimony, Plaintiff testified that he has borderline personality disorder, making social interactions difficult, that his diabetes has gotten worse, and that he uses his mom's cane or a stool for stability. (AR. at 22, 41, 43–44, 48, 206.) Further, Plaintiff testified that he had issues with blurry vision, hearing loss, urinary frequency, dizziness and a lot of depression and anxiety, especially when being around other people. (AR. at 22, 46–48, 50–51.)

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely supported with the evidence of record. (AR. at 22.) Plaintiff contends that the ALJ used an improper legal standard regarding his treatment, and that the ALJ's discussion of daily activities does not cure this error. (Doc. 9 at 11, 14.) The Court disagrees.

As it relates to the first argument, Plaintiff specifically takes issue with the ALJ's phrasing regarding treatment. (Doc. 9 at 11–12.) The ALJ noted "[g]iven the claimant's

allegations . . . one might expect to see a tremendous level of medical intervention or aggressive treatment options." (AR. at 22.) From this, Plaintiff asserts that the ALJ applied an improper legal standard which required Plaintiff establish evidence of a "tremendous level of medical intervention." (Doc. 9 at 11–12.) The Commissioner however is correct that Plaintiff "mischaracterizes the ALJ's evaluation of [Plaintiff's] treatment history." (Doc. 11 at 12.) The ALJ specifically notes that Plaintiff has not received any treatment for his hearing loss, and that Plaintiff was non-compliant with taking his medication, and additionally did not return for a follow-up or use any educational materials provided. (AR. at 22, 294, 301.) And while the ALJ does make a comment about a "tremendous level of medical intervention[,]" the ALJ recognizes that the Plaintiff "received essentially conservative care, consisting of medications and therapy." (AR. at 22.) "[C]onservative treatment is sufficient to discount a claimant's testimony regarding severity of impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quotations and citation omitted). The Court does not find that the ALJ applied an improper legal standard here. But even if the ALJ did err in discounting symptoms based on treatment records, the error is harmless because the ALJ also found the symptoms conflicted with the evidence in the record and the Plaintiff's daily activities. (AR. at 22–24.)

"When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022). The ALJ noted that Plaintiff was seen for a preventative exam in July 2021 where he denied hearing, vision, and neurological problems, denied having frequent urination, and denied experiencing dizziness, headaches, anxiety and depression. (AR. at 22, 296.) Plaintiff also had a normal psychiatric and monofilament examination. (AR. at 22–23, 301–302.) In Plaintiff's August 2021 intake, the ALJ recognized that the Plaintiff had a mostly unremarkable mental status exam with some limitations. (AR. at 23, 341.) Later exams demonstrated grossly normal results and Plaintiff denied mood swings or anxiety. (AR. at 23, 370, 378, 384, 387.) Finally, the ALJ noted that Plaintiff had a May 2022 internal medicine evaluation where Plaintiff was

examined: he ambulated normally without a limp or complaints of pain; he had normal balance for tandem walking; he was able to kneel while holding onto a chair despite left knee pain; he was independent getting on and off the exam table; he had full range of motion; and he was neurologically intact in all extremities with no instability in his knees or ankles. (AR. at 23, 414–415.) The ALJ provided sufficient objective medical evidence to undercut Plaintiff's subjective testimony. *Smartt*, 53 F.4th at 500.

The ALJ also considered Plaintiff's daily activities. An ALJ may properly determine that a claimant's daily activities detract from a claimant's credibility if those activities are inconsistent with other testimony, are exaggerated, or indicate capacities that are transferable to a work setting on a sustained basis. *See Molina v. Astrue*, 674, F.3d 1104, 1112–13 (9th Cir. 2012). Even when daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113. The ALJ noted that Plaintiff was independent with activities of daily living, played video games and spent time with others, could ride a bicycle and used public transportation. (AR. at 23–24, 208–210.) Plaintiff argues that these activities do not contradict Plaintiff's testimony, but the Court disagrees. As the ALJ noted, the Plaintiff's ability to ride a bicycle would be difficult for someone who suffered from dizziness, and going to his friend's house, shopping, and to the swimming pool do at least somewhat contradict Plaintiff's claim that he has difficulty interacting with others. (AR. 19, 20, 209–10.) The ALJ provided sufficient reasons that Plaintiff's daily activities "contradict claims of totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The Court finds that the ALJ properly considered the objective medical evidence in tandem with Plaintiff's treatment history and daily activities and did not err in discounting Plaintiff's symptom testimony.

….

….

….

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the August 1, 2023 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration. (AR. at 16–25.)

**IT IS ORDERED** directing the Clerk of the Court to enter final judgment consistent with this Order and close the case.

Dated this 12th day of November, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge